The STATE of Ohio, Appellee,

v.

KRULL et al., Appellants.

[Cite as *State v. Krull,* 154 Ohio App.3d 219, 2003-Ohio-4611.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA2002–06–146 and CA2002–06–153.

Decided Sept. 2, 2003.

Robin N. Piper, Butler County Prosecuting Attorney, and Randi E. Froug, Assistant Prosecuting Attorney, for appellee state of Ohio.

Mary K. Dudley, for appellant, Melissa Krull.

Christopher J. Pagan, for appellant Bart Hilt.

WILLIAM W. YOUNG, Judge.

{¶ 1} Defendants-appellants, Melissa Krull and Bart Hilt, appeal from their convictions in the Butler County Court of Common Pleas for endangering children.

{¶ 2} On September 12, 2001, Michelle Money, an intake social worker at Butler County Children Services ("BCCS"), received a referral regarding six-year-old C.V. Because the referral was deemed an emergency, Money was escorted to the Krull residence by two Middletown police officers to investigate.

{¶ 3} When C.V.'s mother, Melissa Krull, answered the door, Money advised her that they were investigating allegations that her son had marks on him. According to Money, Krull became upset and said that she didn't abuse her kids, but stated, "[W]e kicked his ass, we kicked his ass good."

{¶ 4} On further investigation, Money and the police officers observed marks on C.V.'s buttocks. Money described the marks as "slashes going through, side to side, inside of [a] bruised area" that appeared to be raised, along with a mark with blood on his leg.

{¶ 5} According to Money, Krull stated that C.V. had gotten into trouble at school and Krull had spanked him two to three times with a switch. When C.V. squirmed and laughed at her, she held C.V. down while her boyfriend, appellant Hilt, switched C.V. four to six more times. According to the officers, Hilt told them that he "may have hit [C.V.] too hard." Money and the officers removed C.V. from the home and took him to the hospital for an examination.

{¶ 6} Dr. Martin Dunskee examined C.V. at the hospital. Dr. Dunskee described C.V.'s injuries as linear contusions across the buttocks, upper back, and the back of his legs. He also described abrasion injuries. Dr. Dunskee stated that to break the capillaries, the blows had to be at least moderately hard and that more of a significant blow was necessary to make the contusions. He stated that it was doubtless that the contusions were painful because the strikes were hard enough to break and tear capillaries under the skin. According to Dr. Dunskee, the worst pain would be experienced while getting the bruise, but blood anywhere outside the body is irritating, and the bruises would continue to be painful when moving around. He stated that he generally tells patients to take Motrin or Tylenol for the pain.

{¶ 7} Appellants were each charged with one count of child endangering with a specification that they caused serious physical harm. They were found guilty of the charges and were sentenced accordingly by the trial court. Appellants separately appealed their convictions and the cases were consolidated on appeal. Appellants' assignments of error are each discussed individually below.

### Melissa Krull's Appeal

{¶ 8} On appeal, Krull raises four assignments of error.

### Assignment of Error No. 1

{¶ 9} "The trial court erred in overruling the Criminal Rule 29 motion where there was no evidence of serious physical harm."

### Assignment of Error No. 2

{¶ 10} "The verdict is against the manifest weight of the evidence."

### Assignment of Error No. 3

{¶ 11} "The trial court erred in not permitting the defense expert to testify whether the child was an abused child."

Assignment of Error No. 4

{¶ 12} "The trial court erred in excluding the daycare records of [C.V.]."

{¶ 13} In her first assignment of error, Krull contends that the trial court erred in denying her Crim.R. 29 motion. When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. *State v. Thompson* (1998), 127 Ohio App.3d 511, 525, 713 N.E.2d 456. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 14} Krull argues that her Crim.R. 29 motion should have been granted because the state failed to present sufficient evidence to establish that C.V. suffered serious physical harm. As mentioned above, appellants were charged with child endangering with a specification of serious physical harm. See R.C. 2919.22(E)(2)(d). The Ohio Revised Code defines "serious physical harm" as:

{¶ 15} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

{¶ 16} "(b) Any physical harm that carries a substantial risk of death;

{¶ 17} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

{¶ 18} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶ 19} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

{¶ 20} The state alleged that the evidence was sufficient to establish "temporary, serious disfigurement" and "acute pain resulting in substantial suffering." Krull argues that C.V. did not testify that he was in pain. She also argues that while the photographs show bruising, the state's expert could say only that there was pain at the time of bruising and while the bruise heals, but he did not discuss the extent of pain. She further argues that the doctor's records do not show that C.V. complained of pain or that the doctor prescribed anything to relieve pain. Krull also argues that the testimony of her medical expert was that the bruises were superficial.

{¶ 21} However, there was also testimony from Money and the police officers that when they investigated two days after the switching, there was extensive bruising on C.V.'s buttocks and legs, some of which involved raised linear marks,

and a bloody cut. Several photographs were introduced at trial documenting the severity of the bruises. Dr. Dunkee testified at trial and described the extent of C.V.'s injuries and that the bruises would have been painful when inflicted and continued being painful for seven to ten days. He also stated that in this type of case, he would recommend Tylenol or Motrin for the pain.

{¶ 22} This court has previously found the evidence sufficient to establish serious physical harm where there were bruises around a child's buttocks and back, described as moderate, purple and red in color, and somewhat raised and swollen, and where the jury had the opportunity to view the photographs of the injuries and determine the extent of the injury. *State v. Burdine–Justice* (1998), 125 Ohio App.3d 707, 709 N.E.2d 551.

{¶ 23} We find the evidence in this case, viewed in a light most favorable to the prosecution, similar to that of *Burdine–Justice*. Accordingly, we find that the evidence was sufficient to establish the elements of child endangering, including the element of serious physical harm. Evidence was presented that C.V. suffered bruising and marks on his buttocks and thighs that caused pain that likely lasted several days after being inflicted. The bruises were severe enough for Money to remove C.V. from his mother's care and to take him to the emergency room for an examination. Appellant's first assignment of error is overruled.

{¶ 24} In her second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 389, 678 N.E.2d 541. The standard for reversal of a verdict that is against the manifest weight of the evidence has been summarized as follows:

{¶ 25} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 26} Appellant argues that the verdict was against the manifest weight of the evidence for the same reasons expressed in her first assignment of error, that there was insufficient evidence of serious physical harm. We disagree. As mentioned above, there was sufficient evidence which, if believed, could establish serious physical harm. Furthermore, the jury not only heard the testimony of the witnesses regarding C.V.'s injuries, but also had the opportunity to view the photographs and to see the extent of the injury. Thus, we cannot say that the jury clearly lost their way in determining that serious physical harm existed in this case. Krull's second assignment of error is overruled.

{¶ 27} In her third assignment of error, Krull contends that the trial court erred in not permitting her expert witness to testify regarding whether C.V. was an abused child. Krull argues that, pursuant to Evid.R. 704, an expert is permitted to testify on an ultimate issue to be determined by the fact-finder, but her expert was prohibited from testifying that C.V. was not an abused child.

{¶ 28} It is well established that the admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157.

{¶ 29} Evid.R. 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an issue to be decided by the trier of fact." The Staff Notes to Evid.R. 704 state that the rule does not necessarily "make opinion evidence on the ultimate issue admissible; it merely provides that opinion evidence on an ultimate issue is not excludable per se." The rule is to be read in conjunction with Evid.R. 701 and 702, each of which requires opinion testimony to help or assist the trier of fact in the determination of a factual issue.

{¶ 30} In this case, Krull and Hilt were each represented by their own attorneys and jointly presented the testimony of Dr. Robert Lerer. Defense counsel for Hilt asked Dr. Lerer, "[D]o you have an opinion based upon reasonable medical certainty as to whether or not this amounts to child abuse?" The trial court sustained an objection to the question. During a sidebar conference on this issue, the trial court stated that the question went to the ultimate issue in the case, whether appellants' acts constituted child abuse. The trial court explained that there may be different definitions of child abuse from a medical and legal standpoint and that it would be charging the jury on the legal definition and did not want confusion regarding the standard. The trial court stated that a proper foundation had not been laid to establish whether the physician's opinion was based on a medical or legal definition of abuse.

{¶ 31} Krull's counsel stated that it doesn't matter whether the opinion goes to the ultimate issue, but that she had no problem with requiring that a foundation be laid. The trial court stated that Hilt's counsel needed to lay more of a foundation regarding the difference between a medical diagnosis of an abused child and a legal definition of what constitutes child abuse in the state of Ohio. The trial court then stated, "[I]f you can say, Doctor, if you assume the legal definition of abuse is this and your medical opinion, I might permit that, but that was not the question and we have an improper foundation at this point."

{¶ 32} Counsel for Hilt then asked a series of questions relating to child abuse but failed to lay a foundation establishing whether the doctor was assuming a medical or legal definition of abuse. Krull's counsel then questioned the doctor and asked questions regarding the American Academy of Pediatrics' criteria for diagnosing abuse. However, she did not ask any further questions regarding the legal definition of abuse or whether the facts of this case would amount to a diagnosis of abuse under either standard.

{¶ 33} Thus, we find that the trial court did not err in sustaining objections to Dr. Lerer's opinion on whether C.V. was an abused child. At the point the question was asked, an insufficient foundation had been laid. As mentioned above, although an opinion on the ultimate issue in a case may be admissible, the rule does not necessarily make opinion evidence on the ultimate issue admissible. Instead, it merely provides that opinion evidence on an ultimate issue is not excludable per se. The evidence must first be "otherwise admissible." Evid.R. 704.

{¶ 34} The trial court did not err by sustaining the objection on the basis that the evidence was not admissible because a proper foundation had not been laid. After sustaining the objection on this basis, neither defense counsel attempted to ask the question again after laying the proper foundation. Thus, we find no merit to Krull's argument that she was prohibited from asking Dr. Lerer whether the punishment in this case constituted child abuse. Krull's third assignment of error is overruled.

{¶ 35} In her fourth assignment of error, Krull contends that the trial court erred in excluding C.V.'s daycare records. According to Krull's brief, the trial court "granted the State's motion in limine to exclude the daycare records as the child's conduct goes to his character." However, while a review of the record in this case reveals a motion to exclude the records on this basis, we find no evidence in the record regarding the trial court's ruling on the motion, nor has Krull provided any reference to where in the record the motion in limine was granted.

{¶ 36} On the other hand, the state incorrectly states in its brief that the records were never proffered to the trial court, while, in fact, they were submitted with a discovery response and were the subject of the state's motion in limine to exclude them from trial.

{¶ 37} An order granting or denying a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial. *State v. White* (1982), 6 Ohio App.3d 1, 4, 6 OBR 23, 451 N.E.2d 533. A motion in limine, if granted, "is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 503 N.E.2d 142. The granting of a motion in limine, in and of itself, does not preserve the record on appeal. Id., 28 OBR 285, 503 N.E.2d 142. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached at trial. Id., citing *White*, 6 Ohio App.3d at 4, 6 OBR 23, 451 N.E.2d 533. The wisdom of this requirement is apparent from the confusion evident in the facts discussed above. Since no proffer of the daycare records was made at trial, there is no evidence that they were excluded, nor is there any rationale by the trial court for excluding the evidence available for this court to review.

{¶ 38} Thus, assuming that the trial court granted the state's motion in limine before trial as asserted in Krull's brief, the failure to proffer this evidence and renew her objection to the trial court's ruling on the state's motion in limine waived any error except plain error. See *Grubb*, at 203, 28 OBR 285, 503 N.E.2d 142; Evid.R. 103(A). An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Stojetz* (1999), 84 Ohio St.3d 452, 455, 705 N.E.2d 329.

{¶ 39} Only one of C.V.'s daycare records, an incident report regarding his actions on the day he was suspended, was offered at trial. The trial court allowed this record and testimony from daycare workers and Hilt regarding the events surrounding the suspension. Furthermore, the trial court also allowed testimony from Hilt regarding C.V.'s repeated disciplinary problems at school. Hilt testified that he and Krull received frequent reports on disciplinary problems with C.V. from the daycare and had to pick him up because of uncontrollable behavior on several occasions. He testified that C.V. had been disciplined for attacking students and teachers, hitting, kicking, pinching, and spitting in teachers' faces. This is the type of evidence that the daycare records contained. Thus, given the fact that the jury heard that C.V. was a disciplinary problem at daycare, we cannot say that the result of trial would have been different had the

records themselves been admitted. Krull's fourth assignment of error is over-ruled.

### Appellant Bart Hilt's Appeal

{¶ 40} Appellant, Bart Hilt, raises three assignments of error.

### Assignment of Error No. 1

{¶ 41} "The trial court erred by making the finding of serious physical harm."

### Assignment of Error No. 2

{¶ 42} "The trial court erred by giving an improper jury charge."

### Assignment of Error No. 3

{¶ 43} "The trial attorney was constitutionally ineffective."

{¶ 44} In his first assignment of error, Hilt argues that his conviction violates the constitutional requirement that the jury decide every element of an offense beyond a reasonable doubt, as determined by the United States Supreme Court in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 45} In *Apprendi,* the defendant pled guilty to firearm possession charges as part of a plea agreement. The trial court then separately determined that the crime was committed with the purpose to intimidate because of race pursuant to the state's hate-crime statute. The finding by the trial court elevated the penalty from five to 10 years to a period of 10 to 20 years.

{¶ 46} The Supreme Court found that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 47} In this case, appellant argues that the jury were not charged on the issue of determining whether serious physical harm was present. Under Ohio law, if child endangering causes serious physical harm, the penalty is increased from a first-degree misdemeanor to a second-degree felony. See R.C. 2919.22(E)(2)(a) and 2919.22(E)(2)(d). Appellant argues that the jury were not instructed and did not make a finding on whether serious physical harm occurred.

{¶ 48} However, reading the jury instructions as a whole, it is evident that the jury were charged that they should determine whether serious physical harm occurred. The trial court instructed the jury that they must evaluate the physical harm to the child. The trial court initially instructed that to find Hilt

guilty, the jury must find that he "recklessly abused a child which created a substantial risk of serious physical harm." The trial court defined the concept of "serious physical harm" to the jury. The trial court then explained to the jury that if they did not find Hilt guilty as charged in the indictment, then they must consider the lesser included offense, also defined as child endangering. The trial court then explained that "the primary offense of endangering children is distinguished from the lesser offense by the absence or failure to *prove the harm caused was serious physical harm as defined to you.*" (Emphasis added.) The verdict forms given to the jury were labeled as "Verdict–Count One" and "Verdict–Count One—Lesser Offense." The jury signed and returned the forms for the greater offense.

{¶ 49} Thus, we find that the facts of this case are distinguishable from *Apprendi,* since the jury, not the trial court, made the determination that serious physical harm existed, increasing appellant's possible sentence. See *State v. Elkins,* 148 Ohio App.3d 370, 2002-Ohio-2914, 773 N.E.2d 593 (*Apprendi* not violated where jury determined that offender possessed at least 100 times the bulk amount of illegal substance, thus qualifying him for major drug-offender status and increased penalty). Hilt's first assignment of error is overruled.

{¶ 50} In his second assignment of error, Hilt contends that the trial court erred in giving a jury instruction that the court, not the jury, should assess the appropriateness of the corporal discipline.

{¶ 51} Defense counsel requested an instruction informing the jury of the reasonableness of Hilt's actions as corporal punishment. Counsel requested an instruction from language in *State v. Ivey* (1994), 98 Ohio App.3d 249, 258, 648 N.E.2d 519, which states, "In making the determination of abuse, the trial court must look at the circumstances giving rise to the harm to the child, the disciplinary measures employed by the parent, the child's past history and any other potential relevant factors." The trial court incorporated the requested instruction into the jury instructions. However, the trial court did not change the language to reflect that the jury, as the trier of fact, should determine whether the corporal punishment was reasonable. See *State v. Burdine–Justice* (1998), 125 Ohio App.3d 707, 713, 709 N.E.2d 551 ("trier of fact" must consider the circumstances in relation to the disciplinary measures).

{¶ 52} Hilt did not object to the jury instruction after it was read. Therefore, we review this assignment of error under a plain-error analysis. To constitute plain error, it must appear from the record that an error occurred and that except for that error the outcome of the trial would have been different. *State v. Williford* (1990), 49 Ohio St.3d 247, 252, 551 N.E.2d 1279. Moreover, a single jury instruction " 'may not be judged in artificial isolation but must be viewed in the context of the overall charge.' " *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-

7017, 781 N.E.2d 72, at ¶ 75, quoting *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus.

{¶ 53} In this case, the trial court used the words "trial court" instead of "trier of fact." However, viewing the instructions as a whole, we find that the mistake did not rise to the level of plain error.

{¶ 54} With regard to the language surrounding the instruction at issue, the context makes it apparent that this consideration is part of the jury's determination of whether abuse occurred. In its instructions, the trial court carefully explained the nature of the charge against appellants. The trial court then defined several terms, including "abuse," that it instructed the jury to use in determining whether appellants were guilty of the offenses charged. The trial court then instructed the jury with the language Hilt now objects to as follows:

{¶ 55} "In making the determination of abuse, the trial court must look at the circumstances giving rise to the harm to the child, the disciplinary measures employed by the parent, the child's past history, and any other potential relevant factors. Of importance in evaluating the physical harm to a child is whether the nature of the physical harm is warranted based upon the underlying circumstances. Clearly, parents are entitled to utilize disciplinary measures for their children, however, such discipline must not be of such gravity that it becomes unreasonable in light of the underlying cause."

{¶ 56} Viewing the error in light of the instructions as a whole, we find that the jury instructions did not mislead the jury in a manner that would amount to plain error. They were instructed that one of the elements they must determine was whether abuse occurred. The above instruction further defined elements for the jury to consider in making their determination of whether abuse occurred. Furthermore, where necessary in the instructions, the trial court explicitly stated in clear and uncertain language certain things that the jury should *not* consider in making their determination. We find that the instructions as a whole did not rise to the level of plain error as they adequately informed the jury that they should consider the circumstances and other factors surrounding the corporal punishment in determining whether abuse occurred. Hilt's second assignment of error is overruled.

{¶ 57} In his third assignment of error, Hilt contends that his trial counsel was ineffective. To decide Hilt's claim of ineffective assistance of counsel, we must apply the two-tier test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, Hilt must show that counsel's actions were outside the wide range of professionally competent assistance. Second, Hilt must show that he was prejudiced as a result of counsel's actions. Id. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Prejudice will not be found unless Hilt demonstrates that there is a reasonable possibility that, if not for counsel's errors, the result of the trial

would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142, 538 N.E.2d 373.

{¶ 58} Hilt argues that his trial counsel was ineffective for failing to raise the *Apprendi* violation in his first assignment of error and for failing to object to the jury instruction in his second assignment of error. As mentioned above, the facts of this case did not violate *Apprendi*. In addition, we found in Hilt's second assignment of error that the mistake in jury instructions was not prejudicial. Accordingly, Hilt's third assignment of error is overruled.

Judgments affirmed.

VALEN, P.J., and WALSH, J., concur.