OPINION *Page 2 
{¶ 1} Defendant-appellant Steven DelGallo appeals from the conviction of felonious assault entered against him in the Jefferson County Common Pleas Court. Appellant claims that there was insufficient evidence of the element of serious physical harm and that his conviction of felonious assault was against the manifest weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Appellant lived with the mother of his infant son and her two daughters, ages four and eleven. On July 28, 2005, appellant instructed the four-year-old child to try to use the bathroom before going to bed. (Tr. 351). She said she already went, but appellant disbelieved her and took her in the bathroom to enforce his method of training. Once in the bathroom, appellant swore at the child and spanked her multiple times over a period of hours. (Tr. 353, 379). When the child's mother would attempt to get in the bathroom, appellant would restrain the child and keep the mother from entering. (Tr. 354, 378).
 {¶ 3} The child was not put to bed until nearly 2:00 a.m. due to appellant's episode in the bathroom. (Tr. 353, 379). Then, just after 4:00 a.m., appellant entered the child's room and discovered that she had wet her bed. Appellant woke the child up by yelling at her. He then beat her again. (Tr. 359). The mother ran to the neighbor for help. (Tr. 357).
 {¶ 4} The police responded and found the child naked, wet and trembling with visible evidence of being beaten. (Tr.186, 206). She was in the fetal position and would not respond to her mother or sister. (Tr. 360). She had multiple red welts soon to bruise from the most recent beating and marks that had started to bruise from the prior beating. (Tr. 229). She also had older bruises. The paramedic testified that the injuries were not of the type suffered in normal childhood exploits. (Tr. 236-240).
 {¶ 5} Appellant advised the officers, "[the child] wet the bed and I beat her ass." (Tr. 217). He complained that he had to be the one to discipline the child. He also explained that he goes into "a rage" when he is off his medication, which included Lithium for bipolar disorder. (Tr. 219, 367). *Page 3 
 {¶ 6} An ambulance transported the child to the emergency room where she was found to have suffered bruises all over her body as well as abrasions and lacerations. There was evidence of injury on her head, ears, eye, cheeks, mouth, neck, shoulders, hand, back, buttocks, legs and feet. (Tr. 279-282). There was a large amount of hemoglobin found in her urine concluded to be the result of the blows to the area of her kidneys. (Tr. 247-248). The emergency room doctor opined that she was severely beaten. (Tr. 256). She was in the emergency room for over five hours. Ice and over-the-counter pain reliever were prescribed. She consulted with a pediatrician the next day and again on August 9, at which time the bruises were mostly gone. (Tr. 486).
 {¶ 7} Appellant was indicted for felonious assault and kidnapping, both first degree felonies. After a trial on January 10 and 11, 2006, the jury found him guilty as charged. The court sentenced him to six years on each count to run concurrently. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 8} Appellant's sole assignment of error contends:
 {¶ 9} "THE JURY'S VERDICT IN THE DEFENDANT-APPELLANT STEVEN P. DELGALLO'S CONVICTION OF FELONIOUS ASSAULT CONTRARY TO 2903.11(A)(1) OF THE OHIO REVISED CODE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 {¶ 10} The felonious assault charge herein entails the elements of knowingly causing serious physical harm to another. R.C. 2903.11(A)(1). See, also, R.C. 2903.11(D) (where the victim suffered serious physical harm, the offense is a first degree felony with a mandatory prison term). Appellant contests the serious physical harm element.
 {¶ 11} Although the text of appellant's assignment of error only refers to weight of the evidence, his argument thereunder also alleges that there was insufficient evidence of serious physical harm. As we have stated multiple times, weight and sufficiency are distinct concepts. See, e.g., State v. Alicea, 7th Dist. No. 99CA36, 2002-Ohio-6907, ¶ 26; State v. Griffin, 7th Dist. No. 01CA151, 2002-Ohio-6900, ¶ 18. *Page 4 
Thus, different standards apply to each argument. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. We shall start with an analysis of the sufficiency of the evidence.
 {¶ 12} Sufficiency is a question of law dealing with whether or not the evidence is adequate enough to even be presented to the jury for deliberation. Id. at 386. In determining sufficiency, the reviewing court evaluates whether any rational trier of fact could find the essential elements proven beyond a reasonable doubt. State v. Goff
(1998), 82 Ohio St.3d 123, 138. In doing so, we view the evidence in the light most favorable to the prosecution. Id.
 {¶ 13} The existence of physical harm is undisputed. The contested element here is whether the physical harm was serious. Serious physical harm is defined as any of the following:
 {¶ 14} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 15} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 16} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 17} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 18} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(a)-(e).
 {¶ 19} In viewing the testimony in the light most favorable to the state, a rational person could find sufficient evidence of serious physical harm. See, e.g., State v. Krull, 154 Ohio App.3d 219,2003-Ohio-4611, ¶ 21, 23 (child suffered serious physical harm through extensive bruising and marks on buttocks that caused pain for several days and required visit to emergency room). Appellant beat this small child all over her body two times in one short night for a prolonged period of time and only stopped when the police arrived. She had blood in her urine. (Tr. 247-48). She was only four years old, which is a consideration in determining the extent of incapacity or pain. Only one category is necessary, but we find at least three different categories of serious physical harm that apply to the facts of this case. *Page 5 
 {¶ 20} Some rational juror could find that the physical harm suffered in the savage beating involved some temporary, substantial incapacity under R.C. 2901.01(A)(5)(c). When the police arrived, the child was shaking, crying and very upset. She was in the fetal position and would not respond to her mother or sister. (Tr. 360). She screamed in pain each time the police moved her blanket. (Tr. 218, 220). She was transported to the hospital in an ambulance. She had pain all over, including a headache. She advised that she had trouble recalling her own name and continually asked her sister what her name was. (Tr. 244-245, 248). That fact, her headache and her head injuries prompted a CT scan of the head. (Tr. 247). Blood in her urine and injuries to her back prompted a CT scan of her abdomen and pelvis, which required subjection to an IV for dye. (Tr. 246-47). Besides all the bruises and abrasions, it was opined that the child suffered a closed head injury and a mild concussion. (Tr. 252). The evidence indicated that this child weighing less than forty pounds was struck hard in multiple places. And, she was a mere four years old. For all of these reasons, some rational juror could find a temporary, substantial incapacity.
 {¶ 21} Furthermore, a reasonable fact-finder could determine that the physical harm involved some temporary, serious disfigurement under R.C.2901.01(A)(5)(d). This conclusion could be reached by a rational juror after viewing (in the light most favorable to the state) the testimony of the mother, the police officers, the paramedic, the emergency rooms nurses and doctors. Plus, evidentiary photographs were taken at two different times in the emergency room, the day after the event and four days after the event. Regarding the earliest photographs, an officer testified that many of the early stage marks and bruises would not have shown up in a photograph. (Tr. 222). The jury could view the photographs, this testimony and the descriptions of the various witnesses to conclude that the small child suffered some temporary, serious disfigurement.
 {¶ 22} For instance, the child's mother testified that the child's face looked like it had gone through a war. She had a cut by her eye and what became a black eye. (Tr. 360). The police officers described her red marks, bruises and swollen eyes. A paramedic described red welts about her face, dried blood around her mouth, red welts on her back and both legs front and back. (Tr. 229). The emergency room *Page 6 
doctor testified to extensive bruising everywhere which was very upsetting to look at. (Tr. 245-46). A nurse individually described the damage to each body part. Both ears had bruises and abrasions. Her scalp was bruised and abraised. Her right eye was swollen, had an abrasion and appeared to be a black eye. Both flanks were bruised in the area of her kidneys. Her left buttock had bruises, abrasions and a laceration. Her right buttock was bruised. Her middle back was bruised. Both legs had bruises. (Tr. 279-280). Her middle finger was swollen, bruised and cut. She was bleeding from her cheeks, mouth and buttocks. Her upper lip was swollen. (Tr. 293). The later set of photographs depicted horrible bruising over the kidney area.
 {¶ 23} Such testimony and evidence sufficiently established some temporary, serious disfigurement. See, e.g., State v. Overby, 4th Dist. No. 05CA5, 2005-Ohio-5714, ¶ 1 (child suffered temporary, serious disfigurement from bruise and boot imprint on back, other bruises and bump on head); State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 715
(bruises visible days after the event constituted some temporary, serious disfigurement for child).
 {¶ 24} Furthermore, some reasonable person could find acute pain of such duration as to result in substantial suffering or involving any prolonged or intractable pain under R.C. 2901.01(A)(5)(e). Obviously, the child was in extreme pain during the beating. Witnesses opined that she was in acute pain after the beating. (Tr. 220). One can reasonably find that she remained in a state of acute pain causing substantial suffering for the hours and even days after the beating.
 {¶ 25} The child's eleven-year-old sister testified to the crashing noises she heard during the beating. (Tr. 413). A police officer testified that the child screamed in pain every time he moved her blanket. (Tr. 220). She complained of pain all over and testified to this fact. (Tr. 425). The child told the nurse she felt pain in her ears, head, cheeks, mouth, neck, shoulders, hand, back, buttocks, legs and feet. (Tr. 281-282, 304). She also felt pain in her stomach and had a headache. The child was rated at three or four on the pain scale during her time in the emergency room. (Tr. 277).
 {¶ 26} The beating was not a mere matter of seconds. This is not a case of a disciplinary spanking or one-time illegal physical contact. This four-year-old child was beaten senseless over a fairly prolonged period of time. It must also be pointed out *Page 7 
that there were at least two separate incidents of beatings within hours of each other. Thus, one could deduce that the second episode aggravated prior injuries causing even more extreme pain.
 {¶ 27} The child suffered extensive bruising and abrasions all over her body. She was hit hard enough on her back to cause blood to appear in her urine. Various body parts were swollen. She was hit in the face near her eye. She was only four years old. She was prescribed ice and an over the counter pain reliever. A jury could find that she was in extreme pain during the beating and still suffered substantially thereafter.
 {¶ 28} For all of the following reasons, there was sufficient evidence to present the element of serious physical harm to the jury. See, e.g.,Overby, 4th Dist. No. 05CA5 at ¶ 1 (child suffered bruise and boot imprint on back, other bruises and bump on head); Krull,154 Ohio App.3d 219 at ¶ 21, 23 (child suffered extensive bruising and marks on buttocks); Burdine-Justice, 125 Ohio App.3d at 715 (bruises visible days after the event). Any one of the categories found above was adequate to allow the case to proceed.
 {¶ 29} We move to the separate issue of whether the jury verdict was against the manifest weight of the evidence. Weight of the evidence concerns the effect of the evidence in inducing belief.Thompkins, 78 Ohio St.3d at 387. In order to reverse a verdict as being against the manifest weight of the evidence, the reviewing court must sit as the "thirteenth juror" and determine that the true jury clearly lost its way and created a manifest miscarriage of justice requiring a new trial. Id.
 {¶ 30} Because credibility of the witnesses and weight of the evidence are questions that are primarily the province of the fact-finder, a verdict is reversed on manifest weight of the evidence grounds only in exceptional circumstances. See id.; State v. DeHass (1967),10 Ohio St.2d 230, 231. The jury occupies the best position from which to observe the demeanor, gestures, and voice inflection of the witnesses.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 31} Reversing on weight of the evidence after a jury trial is so extreme that it requires the unanimous vote of all three appellate judges rather than a mere majority vote. Thompkins,78 Ohio St.3d at 389, citing Section 3(B)(3), Article IV of the Ohio *Page 8 
Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses). When there are two fairly reasonable views of the evidence, we do not choose which one is more believable.State v. Gore (1999), 131 Ohio App.3d 197, 201 (7th Dist.).
 {¶ 32} The jury heard testimony from various medical professionals and police officers describing the child's injuries. They heard testimony on the family's description of the beatings. They saw the photographs depicting the injuries. It was their province to weigh this evidence to determine if serious physical harm was established.
 {¶ 33} Appellant admits to some spanking and slapping the child on the face but claims that the child received most of her injuries from throwing a tantrum while he was trying to bathe her. However, it was the jury's prerogative to find appellant's testimony lacked credibility. There are no exceptional circumstances demonstrating a manifest miscarriage of justice regarding the jury's weighing of the evidence and inferences that can be drawn therefrom.
 {¶ 34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1