[Cite as *State v. Butcher*, 2018-Ohio-4943.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-P-0062** |
| DONTE J. BUTCHER a.k.a. "STACKS," | : | |
| | : | |
| Defendant-Appellant. | | |


Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2015 CR 00567.

Judgment:   Reversed and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellee).

*Kimberly Anne Valenti*, P.O. Box 1149, Hudson, OH  44236 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1}    Appellant, Donte J. Butcher, appeals his criminal convictions on two counts of corrupting another person with drugs, two counts of aggravated trafficking, and one count of failure to appear for trial.  In addition to contesting the sufficiency and weight of the evidence supporting the conviction, he raises four sentencing issues and the denial of his motion to suppress his identification as the seller of drugs by two witnesses.  As the state agrees that the evidence does not support the conviction for failure to appear for

trial, we reverse and remand to that extent.

**{¶2}** As of July 1, 2015, Dalton Lewis had been using heroin for a substantial period and had one prior felony conviction. Earlier in 2015, Lewis was being held in the Portage County Jail when he met Jason Beck, who was also addicted to heroin and had a prior criminal record. Beck was released from the jail in June 2015.

**{¶3}** On July 5, 2015, Lewis was temporarily furloughed from the county jail to obtain medical treatment for a serious skin condition. He went to live with his parents in Streetsboro, Ohio. Within one day of release, Lewis contacted Beck for the express purpose of purchasing heroin. Lewis had a plan to sneak the heroin into the jail after his furlough ended. Beck agreed to assist Lewis in exchange for a portion of the heroin.

**{¶4}** On the evening of July 6, 2015, Beck picked up Lewis near Lewis's residence and drove him to a house on Meridian Street, in Ravenna, Ohio. According to Lewis, Beck made two telephone calls to set up the heroin purchase while driving to Ravenna. One call was to a person named Byron.

**{¶5}** Upon arriving at the Meridian Street house, Beck went inside by himself and spoke with appellant. According to Beck, appellant said that, since he did not know Lewis, he wanted Lewis to come into the house to "make sure" he was not a police officer. Beck therefore brought Lewis inside.

**{¶6}** Since there were others in the home's kitchen, Lewis, Beck, and appellant went into a bathroom beside the kitchen and shut the door. At that point, Beck saw appellant give Lewis a package of drugs, thought to be heroin but later revealed to be fentanyl, in exchange for cash. Lewis then gave half of the drugs to Beck as agreed. Before leaving the bathroom, Lewis and Beck used a needle to inject the just purchased

2

drugs into their arms while appellant watched.

{¶7}   After walking back to Beck's vehicle and getting into the front passenger seat, Lewis lost consciousness.  Believing that Lewis was no longer breathing, Beck quickly drove to a nearby parking lot and performed CPR.  Lewis regained consciousness when Beck splashed him with water.  Beck then drove to Streetsboro and dropped off Lewis.  Lewis walked back to his parents' residence, hid the remaining drugs in the garage so that it could dry out, and went to bed.

{¶8}   The next day, Lewis had his young daughter over to his parents' home for a day-long visit.  Late in the day, he exchanged text messages with Beck, thanking him for saving his life the night before.

{¶9}   After having a "camp-out" with his daughter and mother on the living room floor, Lewis awoke at approximately 2:00 a.m. and went to the garage, where he snorted the remainder of the drugs.  A few minutes later, his mother happened to also wake up and began looking for Lewis.  Knowing that her son regularly went to the garage to smoke cigarettes, she went there and found Lewis sitting in a chair unconscious.  When both parents were unable to wake him, they called 9-1-1, and Lewis was transported to a local hospital, where he was treated and made a complete recovery.

{¶10}  While Lewis was in the hospital, his mother retrieved the clothes he was wearing the night of the overdose and took them home to wash.  In going through the pockets of his shorts, she found a cut-off straw. When detectives came to the Lewis home as part of the ensuing investigation, Lewis's mother gave them the straw.  Subsequent tests on the inside of the straw revealed traces of fentanyl.  No traces of heroin were found.

3

**{¶11}** Upon learning of Lewis's overdose from the hospital, two detectives from the Portage County Drug Task Force came to interview him while he was recuperating at the facility. Initially, Lewis told the detectives that he had bought the drugs from a man named Byron. Since the lead detective knew a man named Byron who also sold drugs at the Meridian Street house, he quickly located a photograph of Byron on his cell phone and showed it to Lewis, who confirmed that he knew the man in the photograph.

**{¶12}** As part of that initial interview, Lewis also told the detectives that Beck had played a role in purchasing the drugs. As a result, the detectives questioned Beck about the incident, and he informed them that Lewis bought the drugs from appellant. The investigation then focused upon appellant. Within five days of the initial interview with Lewis, both he and Beck were shown a photo array at different times and places and were asked to identify the individual who had sold the drugs. Both identified appellant.

**{¶13}** In August 2015, appellant was indicted on the following five charges: two counts of corrupting another person with drugs under R.C. 2925.02(A)(1); one count of corrupting another person with drugs under R.C. 2925.02(A)(3); and two counts of aggravated drug trafficking under R.C. 2925.03(A). All three corrupting charges are second-degree felonies. Both trafficking charges are fourth-degree felonies.

**{¶14}** Appellant moved to suppress both photo identifications contending that the photo array was too suggestive because he was the only person in the array who had a facial tattoo. Upon taking evidence regarding the procedure the police officers followed in presenting the photo array to Lewis and Beck, the trial court overruled the suppression motion without an explanation.

**{¶15}** Appellant's jury trial was originally scheduled to go forward in March 2016.

Appellant did not appear and was arrested a few days later in a neighboring county. Subsequently, the grand jury returned a supplemental indictment against appellant, charging him with failure to appear, a fourth-degree felony under R.C. 2937.29, and intimidation of a crime victim or witness, a third-degree felony under R.C. 2921.04(B).

{¶16} Trial on all charges commenced in July 2016, but resulted in a mistrial because during the state's case-in-chief one of its witnesses testified that appellant was presently incarcerated in a federal penitentiary.

{¶17} Appellant's trial was held in August 2016. At the close of the state's evidence, the trial court granted appellant's Crim.R. 29 motion for acquittal as to the charge of intimidation of a victim or witness. The remaining six charges were submitted to the jury. Appellant was found not guilty of the second count of corrupting another person with drugs under R.C. 2925.02(A)(1), but guilty of the remaining charges.

{¶18} After a sentencing hearing, appellant was sentenced to an aggregate prison term of eleven years. Regarding the corrupting another with drugs counts, the court ordered a mandatory term of five years, consecutive. As to the aggravated trafficking counts, the court imposed one-year terms, concurrent with each other and concurrent with the consecutive five-year terms. As to failure to appear, the court imposed a one-year term, consecutive to the consecutive five-year terms. The trial court imposed a $300 fine and court costs, to be satisfied within fifteen years.

{¶19} In appealing his conviction and sentence, appellant assigns the following as error:

{¶20} "[1.] The state failed to present sufficient evidence to support convictions of the offenses in [counts] 1 & 5, 3 & 4, and 6, and the jury's verdicts, appellant's convictions

5

as a matter of law, reversible error; and/or the jury's verdicts were against the manifest weight of the evidence.

{¶21} "[2.] the trial court erred in not entering a judgment of acquittal of appellant pursuant to Crim.R. 29, either on defendant's motions or on its own.

{¶22} "[3.] The trial court erred in overruling defendant's motion to suppress without stating its essential findings on the record as required under Crim.R. 12(F).

{¶23} "[4.] The court committed reversible error by ordering appellant to have no contact with the victims.

{¶24} "[5.] The court committed reversible and plain error when it sentenced appellant without notice required in R.C. 2929.19(B)(2)(F).

{¶25} "[6.] The court erred in imposing a mandatory prison sentence upon defendant.

{¶26} "[7.] The court committed reversible error in assessing a fine and an 'assessment and recoupment fee' without any regard to defendant's ability to pay those amounts, and committed reversible and plain error by ordering the defendant to pay an 'assessment and recoupment fee.'

{¶27} "[8.] The cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived appellant of a fair trial and a denial of due process, the court denied defendant a fair trial, by cumulative effect of its own errors."

{¶28} Under his first two assignments, appellant maintains that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. When a conviction is not against the manifest weight of the evidence, then there is necessarily sufficient evidence to support the conviction. *State v. Craig*, 11th Dist. Lake

6

No. 2016-L-113, 2017-Ohio-8939, ¶52.

**{¶29}** "When an appellate court analyzes a conviction under the manifest weight standard[,] it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. [*State v. Thompkins*, 78 Ohio St.3d 380,] at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment. *Id.*" *State v. Watson*, 3rd Dist. Union No. 14-09-01, 2009-Ohio-6713, ¶33.

**{¶30}** As previously discussed, appellant was convicted of two counts of corrupting another person with drugs in violation of R.C. 2925.02(A)(1) and (A)(3). These provisions state:

**{¶31}** "(A) No person shall knowingly do any of the following:

**{¶32}** "(1) By force, threat, or deception, administer to another or induce or cause another to use a controlled substance;

**{¶33}** "* * *

**{¶34}** "(3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent * * *."

**{¶35}** The first "corrupting" count, R.C. 2925.02(A)(1), was based upon Lewis's use of the fentanyl in the bathroom of the Meridian Street house, immediately following the sale. The second "corrupting" count, R.C. 2925.02(A)(3), was based upon Lewis's

7

snorting fentanyl in his parents' garage. Although there was a third "corrupting" count pertaining to Beck's use, the jury rendered a not guilty verdict.

{¶36} In his primary challenge to both "corrupting" convictions, appellant asserts that the evidence establishes that it was Byron, not he who sold drugs. He notes that there was evidence showing that Byron was the first person Beck called in setting up the purchase and when the drug force detectives first spoke with Lewis at the hospital, he referred to Byron as the seller.

{¶37} At trial, the lead detective testified as to why, despite the initial statement Lewis made at the hospital, Byron was not considered a serious suspect. According to the detective, Lewis also informed them that Beck was involved in the purchase. While interviewing Beck, he told the detectives that appellant sold the drugs. After that, Lewis also agreed that appellant was the seller. It appears that Lewis said Byron sold the drugs at the initial interview because he heard Beck use that name while driving to the Meridian Street house. Lewis was never in doubt of who sold the drugs, but was wrong about his name.

{¶38} As part of his trial testimony, Beck stated that he saw appellant give the drugs to Lewis while the three were in the bathroom together. Furthermore, both Beck and Lewis identified appellant as the perpetrator when they were shown the photo array of possible suspects. Both men also confirmed the identification at trial. Hence, there was ample evidence upon which the jury could find that appellant sold the fentanyl to Lewis.

{¶39} In regard to both "corrupting" counts, appellant further argues that there was no evidence demonstrating that the substance he gave to Lewis was fentanyl. As to this

8

point, the evidence shows that, in using the remainder of the drugs he received from appellant, he snorted the fentanyl in his parents' garage. Also, his mother found a cut-off straw in the pocket of his shorts after he was taken to the hospital. In relation to the straw, the state presented evidence showing that traces of fentanyl, but no heroin was found inside it.

{¶40} As to the count under R.C. 2925.02(A)(1), appellant claims that there was no evidence that he deceived either Lewis or Beck. However, there is no dispute that Lewis and Beck went to the Meridian Street house to buy heroin, and that appellant sold them pure fentanyl. Thus, the "deception" element was met.

{¶41} As to the "corrupting" count under R.C. 2925.02(A)(3), there is likewise no dispute that appellant "furnished" the fentanyl to Lewis that he snorted the night after the purchase. Moreover, there is no dispute that Lewis suffered serious physical harm as a result of taking the fentanyl, in that he lost consciousness and nearly died. Because the jury did not lose its way in finding that all elements of both "corrupting" counts were satisfied, appellant's conviction on those charges are not against the manifest weight of the evidence.

{¶42} Concerning appellant's conviction on the two aggravated trafficking counts under R.C. 2925.03(A), appellant reasserts his argument that he was not the seller. For reasons stated, there is considerable evidence from which the jury could find that appellant offered and sold the drugs.

{¶43} Appellant's fifth conviction was for failure to appear under R.C. 2937.29 and 2937.99. He argues that, to be convicted of this crime, a defendant must have been released on his own recognizance prior to failing to appear for trial. He also argues that,

9

since he was released on bond prior to the first scheduled trial in March 2016, the state's evidence is insufficient to establish a violation of the two statutes. In response, the state does not contest appellant's argument. Moreover, the record verifies that appellant was not released on his own recognizance when he did not appear for trial. Accordingly, appellant's conviction for failure to appear must be vacated as not supported by sufficient evidence.

{¶44} To the limited extent that the conviction for failure to appear must be vacated, appellant's first and second assignments have merit. Appellant's conviction on the remaining four offenses are affirmed.

{¶45} Under his third assignment, appellant raises two arguments regarding the denial of his motion to suppress the pretrial identifications by Lewis and Beck. First, he contends that the trial court failed to properly explain the factual and legal bases of its ruling, as mandated under Crim.R. 12(F). Second, appellant claims that both identifications should have been suppressed because the photo array was unduly suggestive and does not comply with the requirements of R.C. 2933.83. We address appellant's second argument first.

{¶46} "In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. First, the court must determine whether the identification procedure was unduly suggestive. If the procedure was overly suggestive, then the court must proceed to the second step in which it ascertains whether there was a substantial likelihood of misidentification. *Biggers* at 197-199. As a result, before identification testimony will be

10

suppressed, the court must find that the procedure employed by the police was so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.

**{¶47}** "The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in *Biggers*. *State v. Green* (1996), 117 Ohio App.3d 644, 652-653, 691 N.E.316; *State v. McDade* (Sept. 25, 1998), 11th Dist. No. 97-L-059, 1998 WL 682360, at 4. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. *Green* at 653, 691 N.E.2d 316; *McDade* at 4. However, if the defendant satisfies his initial burden of proof, the burden of persuasion falls upon the state to show that the evidence is valid. *State v. Kuzma* (Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 Ohio App. LEXIS 5768, at 5, quoting *State v. Hensley* (1992), 75 Ohio App.3d 822, 828-829, 600 N.E.2d 849." *State v. Perry*, 11th Dist. Trumbull No. 2002-T-0035, 2003-Ohio-7204, ¶14-15.

**{¶48}** In determining a motion to suppress a pretrial identification, the "'primary evil to be avoided is "a very substantial likelihood of irreparable misidentification."'" *State v. Gaines*, 11th Dist. Trumbull No. 2015-T-0061, 2016-Ohio-1312, ¶20, quoting *Biggers*, 409 U.S. at 198.

**{¶49}** In *Gaines*, the defendant argued that the photo array showed to the victim was unduly suggestive because he was the only person in the six photographs that had dreadlocks. At the outset of our analysis, this court quoted the Eighth Appellate District: "'Photographic displays have been held not unduly suggestive even when certain characteristics of the defendant or his photograph are set apart from others.' *State v.*

11

*Conroy*, 8th Dist. Cuyahoga No. 72987, 1998 WL 655508, *4 (Sept. 24, 1998) * * *." *Id.* at ¶21. Based upon this, we concluded that, even though the defendant was the only depicted person who had "true" dreadlocks, this one distinction was insufficient to render the photo array unduly suggestive. *Id.* at ¶23.

{¶50} Here, appellant maintains that the photo array shown to Lewis and Beck was unduly suggestive because he was the only depicted man who had a facial tattoo. As to this point, a review of his photo demonstrates that it cannot be discerned whether he has a facial tattoo or a large blemish on the side of his face. This is true regardless of whether the photo is in color or black and white. More importantly, a comparison of appellant's photo to the other five photos shows that the presence of the large blemish is the only significant distinction between them. All six photos contain young African-American males with short hair. Therefore, the fact that appellant is the sole individual with a large blemish/tattoo does not render the photo array unduly suggestive. In light of this, it is not necessary to address the second part of the *Biggers* standard for deciding the constitutionality of the pretrial identification procedure.

{¶51} As a separate basis for his motion to suppress Lewis's and Beck's pretrial identifications, appellant contends that, in presenting the photo arrays to both men, the police did not comply with the requirements of R.C. 2933.83. However, "the remedy for a violation of 2933.83 is cross-examination at trial, not suppression of the identification." *Gaines*, at ¶28. Thus, both arguments that formed the basis of the motion to suppress do not have merit.

{¶52} Crim.R. 12(F) provides if a trial court must decide factual issues in ruling upon a motion to suppress, it must state those findings on the record. In deciding

12

appellant's motion to suppress, the trial court did not give any explanation or findings of fact to support its decision denying the motion. Nevertheless, the failure to comply with Crim.R. 12(F) will not constitute a proper basis for reversing the trial court's ruling when the record contains a sufficient basis to review the appellant's argument as to the merits of the suppression motion. *State v. Brocker*, 11th Dist. Portage No. 2014-P-0070, 2015-Ohio-3412, ¶11-12.

**{¶53}** In light of the foregoing discussion, a sufficient basis exists to uphold the denial of the motion to suppress. Since the photo array is clearly not unduly suggestive, the trial court's determination is supported by the record. Therefore, appellant's third assignment lacks merit.

**{¶54}** As part of its final sentencing judgment, the trial court ordered appellant not to have contact with the two victims. Under his fourth assignment, he asserts that the no-contact order must be stricken because such an order is not permissible when the defendant has been sentenced to prison. Acknowledging our decision in *State v. Vidal*, 11th Dist. Portage No. 2016-P-0018, 2016-Ohio-8115, ¶42, the state concedes that a no-contact order cannot be imposed when prison terms are ordered for a felony conviction, and that the proper remedy for this error is to strike the no-contact order from the sentencing judgment. Thus, appellant's fourth assignment has merit.

**{¶55}** Under his next assignment, appellant maintains that the trial court erred in not giving him notice of the requirements of R.C. 2929.19(B)(3)(f). That provision states that, after the trial court has decided that a prison term is necessary or mandated, the defendant must be told that he is not allowed to ingest a drug of abuse and must submit to random drug testing.

13

{¶56} R.C. 2929.19(B)(3)(f) is intended to discourage new prison inmates from using illegal drugs; accordingly, the statute does not create any new substantive right in favor of a defendant. *State v. Culgan*, 9th Dist. Medina No. 09CA0060-M, 2010-Ohio-2992, ¶18, quoting *State v. Leeson*, 2d Dist. Montgomery No. 21993, 2007-Ohio-3704, ¶8. Hence, the failure to provide notice of the statute's requirements is not prejudicial and is viewed as harmless error. *Id.* For this reason, appellant's fifth assignment is also without merit.

{¶57} Under his sixth assignment, appellant contests the trial court's conclusion that each of the five-year terms for the two "corrupting" counts are mandatory. Citing R.C. 2925.02(C)(1)(a), he asserts that the imposition of a mandatory term is not permissible unless the jury finds that the drug involved in the commission of the offense is included in schedule I or schedule II of the listings of illegal drugs. Appellant further asserts that, in finding him guilty of the two counts, the jury did not specifically find that the drug he used to corrupt the two victims was fentanyl, a schedule I drug. According to him, it was the trial court itself which made that finding.

{¶58} As noted above, the offense of corrupting another person with drugs is set forth in R.C. 2925.02. As to the determination of the proper penalty to impose, division (C)(1) of the statute provides:

{¶59} "(1) If the offense is a violation of division (A)(1), (2), (3), or (4) of this section and the drug involved is any compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana * * *, the offender shall be punished as follows:

{¶60} "(a) Except as otherwise provided in division (C)(1)(b) of this section,

14

corrupting another with drugs committed in those circumstances is a felony of the second degree and, subject to division (E) of this section, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."

{¶61} In arguing that the trial court usurped the jury's role as fact finder in regard to the nature of the drug involved, appellant notes that the two "corrupting" charges, as set forth in the original indictment, contain no reference to fentanyl. He further notes that the two jury verdict forms for these two counts did not require the jury to state what drug had been involved.

{¶62} But, in applying the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Twelfth Appellate District has concluded that an adequate jury finding has been made as to a fact relating to a defendant's sentence when the record shows that the trial court instructed the jury on the point. *State v. Krull*, 154 Ohio App.3d 219, 2003-Ohio-4611, 796 N.E.2d 979, ¶44-49 (12th Dist.).

{¶63} In instructing the jury on both of the "corrupting" counts of which appellant was convicted, the trial court did not state that appellant could be found guilty if he used any drug to "corrupt" Lewis. Instead, the court referred expressly to fentanyl as the drug involved in both counts. Therefore, for the jury to return guilty verdicts, it had to find that appellant corrupted Lewis with fentanyl. For this reason, imposition of mandatory prison terms under R.C. 2925.02(C)(1)(a) is based upon the jury's finding in light of the guilty verdicts. Moreover, a five-year prison term is permissible for a second-degree felony. *See* R.C. 2929.14(A)(2) and R.C. 2925.02(C)(1)(a).

{¶64} Appellant's sixth assignment is without merit.

15

{¶65} Under his seventh assignment, appellant raises two arguments as to the propriety of the monetary sanctions the trial court imposed. First, he contends that the court exceeded the scope of authority in ordering him to pay an "assessment and recoupment" fee.

{¶66} During the sentencing hearing, the trial court expressly said that appellant would be required to pay an assessment and recoupment fee. However, in the sentencing judgment, it does not order such. As a result, appellant is not obligated to pay an assessment and recoupment fee. Therefore, the propriety of such a fee is not properly before this court for resolution.

{¶67} Appellant next asserts that the trial court erred in ordering him to pay a $300 fine and court costs without first deciding if he has the ability to pay.

{¶68} "Pursuant to R.C. 2929.19(B)(5), a court must 'consider the offender's present and future ability to pay the amount of sanction or fine' prior to imposing the sanction. A court is not required to conduct a hearing on a defendant's ability to pay nor is it required to make findings regarding the defendant's ability. *State v. McNaughton*, 11th Dist. Lake No. 2011-L-083, 2012-Ohio-1271, ¶30. So long as the record contains some evidence that the trial court considered the issue, a reviewing court will not disturb the court's decision. *Id.*" *State v. Pierce*, 11th Dist. Geauga No. 2012-G-3103, 2014-Ohio-4982, ¶39.

{¶69} During sentencing, the state noted that, as a consequence of appellant's conviction on the two "corrupting" counts and the two trafficking counts, he was subject to a maximum fine of $20,000. Despite this, the trial court only ordered him to pay a $300 fine and court costs of $239, and gave him fifteen years to pay the total sum of $539.

16

Moreover, defense counsel noted that appellant attended school until the ninth grade and later obtained his G.E.D. during a prior prison term. Similarly, the trial court noted that appellant appeared to be an intelligent person. Based on the foregoing, the record contains some evidence that the trial court considered ability to pay.

{¶70} The seventh assignment is not well taken.

{¶71} Under his last assignment, appellant argues that the remaining four counts of his conviction must be reversed in light of the cumulative errors. Although our review of the first seven assignments reveals two errors, none of them pertain to the manner in which the trial court conducted the trial, including the admission of evidence and the jury instructions. Instead, the errors are limited to sufficiency of the evidence in regard to one count and one sentencing issue. Given that these errors have no effect upon the validity of the remaining four convictions, appellant was not denied a fair trial. For this reason, his eighth assignment lacks merit.

{¶72} The judgment of the Portage County Court of Common Pleas is reversed, and the case is hereby remanded for further proceedings. The trial court shall vacate its original sentencing judgment and issue a judgment restating all aspects not reversed. The judgment shall not contain a no-contact order, shall find appellant not guilty of failure to appear for lack of sufficient evidence, and shall modify appellant's sentence accordingly.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.


_____

17

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶73} I concur in the judgment and opinion of the court but write separately with respect to the fifth assignment of error in which Butcher claims the trial court failed to comply with former R.C. 2929.19(B)(2)(f), which provided that "the court shall * * * [r]equire that the offender not ingest or be injected with a drug of abuse and submit to random drug testing * * *." The majority properly notes that this provision does not create "substantive rights" for the defendant and that "the failure to provide notice of the statute's requirements is not prejudicial and is viewed as harmless error." *Supra* at ¶ 55.

{¶74} As I have explained elsewhere, subsection (f) does not provide that a trial court must notify the offender of anything, but merely "require" him or her not to ingest or be injected with a drug of abuse and "require," not notify, the offender to submit to random drug testing. *See State v. Tell*, 11th Dist. Portage No. 2017-P-0031, 2018-Ohio-1886, ¶ 48-50.

{¶75} Under the current version of R.C. 2929.19, there is no longer any such requirement with respect to ingesting or being injected with a drug of abuse or of submitting to random drug testing.

{¶76} Since former subsection (f) did not require the sentencing court to notify the offender of anything[1], I write separately to emphasize that consideration of prejudice and harmless error is not necessary.

---

1. Compare subsections (c), (d), and (e), which expressly require the court to "[n]otify the offender" of certain conditions.

18