OPINION
{¶ 1} Appellant, Patrick M. Boggs, appeals the judgment entered by the Portage County Court of Common Pleas. Appellant was convicted of aggravated arson, arson, felonious assault, and two counts of domestic violence.
 {¶ 2} Appellant was married to Angela Boggs ("Angela"), the victim in this case. During the relevant times of this matter, the couple lived in a trailer in Portage County with their two-year-old daughter.
 {¶ 3} Angela testified that on February 21, 2001, appellant arrived home early from work because he had been laid off. Angela and appellant went to a grocery store and purchased items for dinner and rented a movie. They returned home, where they cooked dinner and drank strawberry daiquiris. After dinner, they watched the movie.
 {¶ 4} During the movie, one of Angela's male friends, Mr. Foster, called her. Mr. Foster was a kidney dialysis patient at a medical center where Angela worked. Shortly after the call, appellant asked Angela who had called, and she told him it was Mr. Foster. Appellant decided to go to Mr. Foster's residence to tell him to stop calling Angela. He told Angela not to warn Mr. Foster he was coming, or it "would be bad for [her.]"
 {¶ 5} Angela did page Mr. Foster to warn him appellant was on his way. Mr. Foster was not home when appellant arrived. Appellant returned home and violently confronted Angela about warning Mr. Foster. During this confrontation, their daughter was sleeping in her room.
 {¶ 6} Appellant struck Angela in the head a few times. She dropped to the floor with her hands over her head to protect herself. Appellant left the trailer and picked up a five-gallon container of kerosene, which was full. The couple used kerosene in heaters to heat their home. As appellant returned with the kerosene, he commented that it would be funny if the place burned down and he and their daughter were the only ones to escape. Appellant doused Angela with about half of the kerosene in the container. Her hair, shirt, and pants were soaked. Angela was near a heater when this occurred, and appellant remarked that she would catch on fire if the heater sparked.
 {¶ 7} Appellant briefly stopped the assault, and Angela went to the bathroom to rinse the kerosene off her face. Appellant followed her into the bathroom and smacked her. Thereafter, appellant pulled out a cigarette lighter, lit it, and proceeded to waive it in front of Angela. He also poked her with it. As appellant was waiving the lighter, he stated that he would bring their daughter to see Angela's grave.
 {¶ 8} While still in the bathroom, appellant told Angela her pants were on fire, although, actually, they were not. As a result, Angela removed her pants in a panic and fell backwards into the bathtub. Appellant struck her a few more times when she was in the bathtub. Appellant then left the bathroom and retrieved the container of kerosene. When he returned, Angela was standing in the bathtub. Appellant struck her again, and she fell down. Appellant dumped the remainder of the kerosene on Angela in the bathtub. After dousing Angela a second time, appellant resumed waiving his lit lighter near her. According to Angela's testimony, appellant dropped the lighter, or it fell, into the bathtub. The lighter went out prior to landing in the bathtub.
 {¶ 9} The events in the bathroom were interrupted by the telephone ringing. Mr. Foster called the trailer, and engaged in an argument with appellant. Angela stated that the remainder of the evening was uneventful.
 {¶ 10} Two days later, appellant arrived home intoxicated. He began yelling at Angela and accusing her of having an affair with Mr. Foster. Angela testified he hit her in the face twice. Angela then called her mother and informed her of these events. Her mother called the sheriff's office, and two deputies responded to the trailer. Angela testified that appellant was heavily intoxicated when the officers arrived and "couldn't even stand up." Appellant was arrested.
 {¶ 11} As a result of these events, appellant was indicted on one count of aggravated arson, one count of arson, one count of felonious assault, one count of endangering children, and two counts of domestic violence. Appellant pled not guilty to these charges, and a jury trial was held. Following the state's case-in-chief, the defense moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court granted appellant's motion regarding the endangering children charge. The trial court denied the motion with respect to the remaining charges. The jury found appellant guilty of these remaining charges.
 {¶ 12} The trial court sentenced appellant to a five-year term on the aggravated arson conviction, a five-year term on the felonious assault conviction, a one-year term on the arson conviction, and a nine-month term for each of the domestic violence convictions. These sentences were ordered to be served consecutively.
 {¶ 13} Appellant raises the following assignment of error on appeal:
 {¶ 14} "The conviction of the appellant was against the manifest weight of the evidence and based on evidence that was insufficient as a matter of law."
 {¶ 15} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[1]
 {¶ 16} In his brief, appellant only challenges his convictions for arson and aggravated arson. Therefore, we will not engage in a detailed analysis of the other convictions. A review of the record, including Angela's testimony, reveals the state presented sufficient evidence to sustain appellant's convictions for domestic violence and felonious assault.
 {¶ 17} Aggravated arson is codified in R.C. 2909.02, which states, in pertinent part:
 {¶ 18} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 19} "(1) Create a substantial risk of serious physical harm to any person other than the offender[.]"
 {¶ 20} Arson is codified in R.C. 2909.03, which states, in part:
 {¶ 21} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 22} "(1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent."
 {¶ 23} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[2]
 {¶ 24} At specific issue in this case is whether there was sufficient evidence presented that there was a "fire" and that a substantial risk of harm was created.
 {¶ 25} There was evidence presented that appellant lit his cigarette lighter on two separate occasions. "Fire" is not defined in the Revised Code Section relating to arson offenses.[3] Therefore, it will be given the meaning generally understood in common usage.[4] The ordinary definition of fire is "[a] rapid, persistent chemical reaction that releases heat and light, esp. the exothermic combination of a combustible substance with oxygen."[5] The flame of the cigarette lighter was a rapid, persistent chemical reaction that produced both heat and light. In addition, the flame was an exothermic combination of the cigarette lighter's fluid (a combustible substance) and oxygen. Accordingly, the flame from appellant's cigarette lighter was a "fire."
 {¶ 26} The characterization of a flame from a lighter as fire is not unprecedented. In State v. Herring, the Second Appellate District held that there was sufficient evidence presented to sustain an aggravated arson conviction where the victim was burned on her unclothed vagina and buttock with a lighter.[6] We agree with the Second District's holding that a flame from a lighter can be a fire for the purposes of R.C. 2909.02 and 2909.03.
 {¶ 27} Detective Scott Witkosky testified that kerosene is flammable. He also testified that if one to two gallons of kerosene were ignited inside the trailer, the entire trailer would be engulfed. This evidence, combined with the fact that the victim was in the bathtub covered in gallons of kerosene while appellant was waving his lit cigarette lighter, is sufficient to show that a substantial risk of harm was created.
 {¶ 28} Historically, arson required a malicious burning of the dwelling house of another.[7] However, as noted above, the current statutes only require that a substantial risk of harm is created by fire. A review of the committee comment to R.C. 2909.02 is helpful in recognizing this distinction. The comment states, in part:
 {¶ 29} "This section substantially broadens former law by defining the offense not only in terms of burning an occupied structure, but also in terms of endangering any person or damaging any occupied structure by means of fire or explosion. In addition, the section represents a significant shift in emphasis from the way in which the relative severity of arson offenses was formerly determined, by using the degree of danger to persons as the key factor and placing only secondary reliance on the kind of property involved in the offense."
 {¶ 30} This comment is extremely helpful in the analysis of this case. Not only was there a risk to property as a result of appellant's conduct, there was a grave degree of danger to Angela and the couple's two-year-old daughter.
 {¶ 31} After soaking Angela in kerosene, appellant waived the flame from a lit cigarette lighter in front of her kerosene soaked body. At the end of this rampage, the victim ended up in the bathtub, where another two-and-a-half gallons of kerosene was poured upon her. Finally, in the words of the terrified victim, "he lit [his lighter] and waving it a little and then it, I don't know if he dropped it or if fell but [it] went out before it landed in the tub." As a matter of law, deliberately waving a flame in the presence of a person soaked in kerosene is aggravated arson.
 {¶ 32} Appellant asserts that there was insufficient evidence that he placed the property of another at risk. He claims the trailer was in his name and none of Angela's personal belongings were in danger. An individual may be prosecuted for arson relating to a spouse's property when they are living together.[8] Angela testified that several of her belongings were inside the trailer when appellant doused her with kerosene. Detective Witkosky testified that the entire trailer would have been engulfed had the kerosene ignited. Taken together, this is sufficient evidence to show that appellant created a substantial risk of harm to Angela's property.
 {¶ 33} Finally, Appellant claims that he could not have acted knowingly, due to his impairment from alcohol. R.C. 2901.21 has been amended, effective October 27, 2000, and now provides, in pertinent part, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."[9] Thus, appellant was not entitled to use the defense of voluntary intoxication.[10]
 {¶ 34} There was sufficient evidence presented to sustain the appellant's convictions for aggravated arson and arson.
 {¶ 35} In addition to his sufficiency argument, Boggs claims the convictions were against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 36} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[11]
 {¶ 37} Boggs did not testify on his own behalf, and the defense did not call any witnesses. Therefore, the version of events as presented by the state's witnesses was the only evidence before the jury. There were not conflicting versions of these events. Thus, it was the jury's decision whether to believe the state's witnesses, including the victim, as to what happened. We cannot say the jury lost its way or created a manifest miscarriage of justice by believing the state's witnesses.
 {¶ 38} Appellant's assignment of error is without merit.
 {¶ 39} The judgment of the trial court is affirmed.
Judgment affirmed.
Judith A. Christley, J., concurs.
DONALD R. FORD, P.J., dissents with Dissenting opinion.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[2] R.C. 2901.22(B).
[3] See R.C. 2909.01.
[4] See, e.g., State v. Zeh (1987), 31 Ohio St.3d 99, 103.
[5] The American Heritage Dictionary, Second College Edition (1991) 505.
[6] State v. Herring (Jan. 31, 1993), 2d Dist. No. 13128, 1993 Ohio App. LEXIS 179, at *13.
[7] See, e.g., Allen v. State (1859), 10 Ohio St. 287.
[8] State v. Regan (1988), 51 Ohio App.3d 214, 215.
[9] R.C. 2901.21(C).
[10] See State v. Rupp (Apr. 8, 2002), 12th Dist. No. CA2001-06-135, 2002 Ohio App. LEXIS 1560, at *17-18.
[11] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387.