[Cite as *State v. Galloway*, 2014-Ohio-1154.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-060** |
| FREDERICK C. GALLOWAY, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 12 CR 000332.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Alana A. Rezaee*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Frederick C. Galloway, Jr., appeals his conviction, following a trial to the court, in the Lake County Court of Common Pleas, for Burglary. The issue to be determined by this court is whether a conviction for Burglary is against the weight and sufficiency of the evidence when the defendant testifies that his entry into the victim's residence was based on a mistake of fact, since he believed he had

permission to enter. For the following reasons, we affirm the judgment of the court below.

{¶2} On July 11, 2012, the Lake County Grand Jury issued an Indictment, charging Galloway with Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(1).

{¶3} A trial to the court was held in this matter on April 1, 2013. The following testimony and evidence were presented.

{¶4} On May 4, 2012, at approximately 1:15 to 1:30 a.m., Stephanie Rosier and her two children were sleeping in her bedroom in her rental house in Madison, Ohio. Rosier had left the front door unlocked, as she expected an ex-boyfriend to come by to pick up money. Rosier was awoken by her dog barking, believed her ex-boyfriend had arrived, and stated "honey, the money is on the counter." When she opened her eyes, she saw a male she did not recognize "standing over [her]," approximately two feet away, and looking down at her. After Rosier made a startled noise, the man ran into the bedroom doorway and stood there. Rosier pretended to be asleep and he left the house. She looked out the window, watched him walk down the sidewalk, and called the police.

{¶5} Rosier was asked by police if anything was missing and noticed some lingerie, which had been sitting on the edge of her bed, was gone. On cross-examination, Rosier clarified that she had not discovered the items, a stocking and a garter belt, were missing until police told her that Galloway had lacy lingerie in his possession. She also explained that the remaining items in a lingerie set were still sitting on the foot of the bed and had not been taken by Galloway.

2

{¶6}     Officer Gregory Williams, of the Madison Police Department, responded to the 911 call regarding the foregoing incident at 1:29 a.m.  He spoke to Rosier, who was "shaken up."    Upon obtaining information regarding past police responses to the residence, he came up with Galloway's name.  Another police officer on the scene, Alex Gritton, recalled that he had conducted a traffic stop of Galloway around midnight on May 4.

{¶7}     The officers began to search the area for Galloway's vehicle.   Gritton explained that the vehicle was located "a short walking distance" from Rosier's home.  The two officers observed Galloway sleeping in the vehicle.  Galloway consented to a search and Williams found a black garter belt and a stocking in his pocket.  Galloway stated that the items belonged to his girlfriend, whom he would not identify.  Galloway was taken to Rosier's home, where she identified him.

{¶8}     Both officers testified that they believed Galloway was intoxicated.

{¶9}     A police interview with Galloway was played for the court, in which he stated that he entered Rosier's house because he believed his cousin, Krista Schaffer, who he had not spoken to for eight months, lived there, since she had in the past.  Once he discovered that another individual was there, he left the home.

{¶10}  Galloway testified that on May 4, he had been drinking and was stopped by a police officer.  The officer informed him that he was too intoxicated to drive, so he called a friend, who dropped him and his truck off at a friend's house.  Galloway then decided to walk to the nearby home of his cousin, Schaffer, to sleep.  He explained that he did enter Rosier's home on that night, but did so because he believed it was Schaffer's home.  Galloway knew that Schaffer had been living in the home for two or

three years. It had been eight months since he had been to Schaffer's home, where he used to sleep several nights a week. He explained that he had permission from his cousin to stay there in the past, although he had not talked to her on that date.

{¶11} Galloway knocked on the door to the house a few times, received no answer, and entered. He stood near what he believed to be his cousin's bedroom, and called out "hello." He heard a person in the bedroom state that she had been waiting for him, stood there for a short period of time, heard the individual ask why he was in the house, realized the woman was not his cousin, and left.

{¶12} Galloway explained that while he was standing in the doorway of the bedroom, he stepped on something and picked it up, since he believed he dropped it and it belonged to him. This later turned out to be the lingerie found in his pocket. He denied telling officers that the lingerie belonged to his girlfriend.

{¶13} On April 2, 2013, the trial court found Galloway guilty of Burglary, as charged in the Indictment. The court found Galloway's testimony "suspect," that he entered the home without permission, and that he had the intent to commit, and did commit, a theft while inside the home. This was memorialized in an April 11, 2013 Judgment Entry.

{¶14} A sentencing hearing was held on May 8, 2013, and, on May 14, a Judgment Entry of Sentence was filed. The court sentenced Galloway to a term of three years in prison, to be served consecutively to a prison term imposed in a separate case, Lake County Court of Common Pleas Case Number 12-CR-000571, which involved two other "break-ins," for a total term of five years in prison.

{¶15} Galloway timely appeals and raises the following assignments of error:

**{¶16}** "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

**{¶17}** "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶18}** Since Galloway's two assignments of error address the sufficiency and manifest weight of the evidence, we will address them jointly.

**{¶19}** A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [trier of fact]," i.e., "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6 Ed.1990). In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credible evidence." (Citation omitted.) (Emphasis deleted.) *Thompkins* at 387. Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d

5

1264, ¶ 25. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

{¶21} In order for Galloway to be convicted of Burglary, the State was required to prove, beyond a reasonable doubt, that he did, "by force, stealth, or deception * * * [t]respass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense." R.C. 2911.12(A)(1).

{¶22} Galloway does not take issue with the lower court's finding that, while inside Rosier's house, he committed a criminal offense, i.e., the theft. Instead, he argues that the State failed to prove that he committed a trespass pursuant to R.C. 2911.21, since he entered Rosier's residence under the mistaken belief that he was entering his cousin's home and had permission to do so. He asserts that his position is supported by the undisputed fact that Rosier's home was occupied by Schaffer in the past. Further, he emphasizes that when he found out Rosier was in the house, he immediately left.

{¶23} For a trespass to occur, a person must, "without privilege to do so, * * * [k]nowingly enter or remain on the land or premises of another." R.C. 2911.21(A)(1). "Where no privilege exists, entry constitutes trespass." *State v. May*, 11th Dist. Lake No. 2010-L-131, 2011-Ohio-5233, ¶ 24, citing *State v. Lyons*, 18 Ohio St.3d 204, 206, 480 N.E.2d 767 (1985). Privilege is "an immunity, license, or right conferred by law,

6

bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶24} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). It is well settled that a defendant's "knowledge can be ascertained from the surrounding facts and circumstances." *State v. Lopshire*, 11th Dist. Portage No. 2005-P-0037, 2006-Ohio-3215, ¶ 31. "Mistake of fact is widely recognized as a defense to specific intent crimes * * * since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." *State v. Snowden*, 7 Ohio App.3d 358, 363, 455 N.E.2d 1058 (10th Dist.1982).

{¶25} In the present matter, there is no doubt that Galloway knowingly entered Rosier's residence but instead the issue is whether he knew that he was not privileged to enter.

{¶26} There are several grounds to support the trial court's conclusion, as the finder of fact, that a trespass did occur. While Galloway asserts that he believed he had permission to enter the home because his cousin had previously allowed him to stay there, the evidence shows that such a belief was questionable. Galloway admitted that he had not talked to his cousin or been to her house in eight months and had not obtained permission to stay at the house on the date of the incident. He was aware that the home was a rental property and no testimony was presented that he attempted to confirm that his cousin still lived in the home. Under Galloway's asserted defense, any

7

person would be permitted to enter a stranger's home merely because they knew someone who had previously lived there. Based on this evidence, it does not appear Galloway was priviledged to enter the home on the night of the burglary. *See State v. Allen*, 11th Dist. Lake No. 97-L-043, 1998 Ohio App. LEXIS 1937, 9 (May 1, 1998) ("although appellant had entered that house through a window before his grandmother's death, there is no evidence that he was privileged to do so on the night of the burglary"); *State v. Wesemann*, 9th Dist. Summit No. 25908, 2012-Ohio-247, ¶ 19 (where the defendant had been staying in an apartment but was not on the lease, did not have a key, and was not given permission to enter on a certain date following a fight with his girlfriend, he was trespassing).

{¶27} Even if there were some merit to Galloway's assertions that his permission to enter the home eight months ago constituted privilege for the purposes of trespass, he did not provide evidence, such as his cousin's testimony, that would corroborate his story that he had such permission to stay in her home.

{¶28} While there was no dispute that Galloway's cousin used to live in the home, there were multiple inconsistencies and contradictions in Galloway's version of the events that could lead the trial court to find that his version, and his assertion that he believed he had permission to enter the home, lacked credibility. The issue of credibility of witnesses is for the trier of fact to determine. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986) (the determination of a witness' credibility lies "with the finder of fact and an appellate court may not substitute its own judgment"). "[T]he factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 Ohio App. LEXIS 1073, 8

8

(Mar. 17, 2000). Galloway told police that the lingerie in his pocket was his girlfriend's, which ultimately turned out to be false. He also stated that he merely picked the lingerie up off the floor because he believed he dropped it, but this also raises credibility issues. It seems unbelievable that he could pick up two lacy lingerie items and believe that they were something he dropped. Moreover, Rosier testified that these items were on her bed, not on the floor. Galloway also stated that he was standing in the doorway of Rosier's bedroom, while she described him as being only a few feet away and looking down at her while she was sleeping. Based on these issues, the court was entitled to determine that Galloway's testimony that he believed he was privileged to enter the house was untrue as well.

{¶29} Moreover, the fact that Galloway took lingerie from the home creates further deficiencies in his version of the events. This is more consistent with the State's theory that Galloway entered the home with the intent to take certain items, not that he entered the home to sleep on his cousin's couch. Further, when Galloway was discovered with the lingerie items in his pocket, he tried to cover up the reason they were in his pocket, stating that they belonged to his girlfriend.

{¶30} We note that Galloway cites *State v. Kelly*, 6th Dist. Fulton No. F-11-002, 2011-Ohio-5687, which also addresses the issue of privilege to enter a home, where the court rejected the defendant's claim that he mistakenly entered the wrong home, since there were significant differences between the two homes. In that case, unlike in the present case, the defendant had permission to enter the correct house. While this case may be distinguishable, *Kelly* does not preclude a holding that the weight of the

evidence supported a conviction under the facts of this specific case. The two cases merely involve different facts that must be evaluated separately.

{¶31} Further, we emphasize that, although there are references to Galloway's intoxicated state in the brief, the fact that he was intoxicated cannot provide the basis for his alleged mistake or lack of knowledge. *See State v. Boggs,* 11th Dist. Portage No. 2001-P-0157, 2003-Ohio-6968, ¶ 33 ("voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense" and a defendant is "not entitled to use the defense of voluntary intoxication") (citation omitted).

{¶32} Based on the foregoing, we cannot find that the conviction of Burglary was against the manifest weight of the evidence. The foregoing discussion establishes that there was evidence from several sources to support a conclusion that Galloway did commit a trespass, and that he had no basis for believing he was privileged to be in the home. Galloway does not dispute that the other elements were proven, including that he committed a theft while inside of Rosier's home. Since the conviction was not against the weight of evidence, there was also sufficient evidence and the denial of the motion for acquittal was proper. *Willoughby v. Wutchiett*, 11th Dist. Lake No. 2002-L-165, 2004-Ohio-1177, ¶ 8 ("[s]ince there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency'") (citation omitted) (emphasis sic).

{¶33} The first and second assignments of error are without merit.

10

{¶34} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, finding Galloway guilty of Burglary, is affirmed. Costs to be taxed against appellant.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.