[Cite as *State v. Vidal*, 2016-Ohio-8115.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-P-0018** |
| EMILIO O. VIDAL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2015 CR 0270 C.

Judgment: Modify and affirm as modified.

*Victor V. Vigluicci,* Portage County Prosecutor, *Pamela J. Holder,* Assistant Prosecutor, and *Kristina Reilly,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Shubhra N. Agarwal,* 3766 Fishcreek Road, #289, Stow, OH 44224 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Emilio O. Vidal, appeals his conviction and sentence for Burglary and Possessing Criminal Tools, following a bench trial in the Portage County Court of Common Pleas. The issues to be determined by this court are whether Burglary is a lesser-included offense of Aggravated Burglary; whether Burglary and Possessing Criminal Tools are supported by the weight and sufficiency of the evidence when a defendant entered a home uninvited, dressed in black, and carrying pepper

spray and zip ties; and whether a defendant may be sentenced to serve a prison term as well as be ordered to have no contact with the victim. For the following reasons, we modify and affirm as modified the judgment of the court below.

{¶2} On April 16, 2015, the Portage County Grand Jury issued an Indictment, charging Vidal with Aggravated Burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(2) and (B), with a firearm specification pursuant to R.C. 2929.14 and 2941.145; and Possessing Criminal Tools, a felony of the fifth degree, in violation of R.C. 2923.24(A) and (C).

{¶3} A trial before the judge was held on June 16, 2015. The following pertinent testimony and evidence were presented.

{¶4} Marwan Mohammed Alansari was at his home in Kent on April 13, 2015, when he saw two men pull up in a car and walk to the side of his house. He went to the side door where he saw one man in the house and the other one "just stepped into [the] house." Alansari asked what they wanted and one man said "I thought you were James." The two men exited and Alansari observed them walk away toward Lincoln Street. Both men were wearing hoodies and caps which covered their head and ears.

{¶5} Alansari called 911 and, shortly thereafter, police arrived and took him to Lincoln Street, where two men had been arrested. He identified them as the men inside of his house. When asked if he saw one of the individuals who entered his home in the courtroom, Alansari said he was "not sure."

{¶6} Sergeant Jason Short of the Kent Police Department responded to the call of a burglary in progress at around 7:30 a.m. on April 13 and was advised that the suspects were headed toward Lincoln Street. Within a few minutes, he and another

2

officer, Drake Oldham, located Vidal and the other suspect, Evan Ecklund, on Lincoln Street, about a block and a half away from Alansari's home. They matched Alansari's description of the suspects. Vidal was wearing black pants, a black hooded sweatshirt, a black ski mask, black and blue gloves "like a worker's glove," and a blue bandana around his neck. The men did not try to flee from the police. Short discovered that Vidal had pepper spray in his pocket and zip ties and goggles in the front of his sweatshirt. The officers found a gun in Ecklund's pocket.

{¶7} Officer Oldham and Sergeant Short were only a minute or two from the area of the burglary when they received the call and located the suspects. Oldham opined that the clothing they were wearing, including the hoodies, caps, and gloves, did not seem "appropriate for the weather." In Ecklund's backpack, there were various items, including a wrench with tape wrapped around the handle "that can be used as a club."

{¶8} Officer Michael Fleming responded to Alansari's home and noted that he seemed "nervous" and "confused." He was taken to identify the defendants, "got really excited and said, yeah, that's them. That's them." Fleming explained that there was no photo array and that the men were wearing their black hoodies at the time of the identification.

{¶9} At the close of the State's evidence, Vidal moved for acquittal pursuant to Crim.R. 29. The court denied this motion.

{¶10} On June 19 and June 26, 2015, Vidal filed Briefs on Motion for Acquittal. The State filed a Response on June 26, 2015.

{¶11} The court issued a Journal Entry on July 24, 2015, in which it found Vidal guilty of the lesser-included offense of Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2), and Possessing Criminal Tools, as charged in the indictment, and not guilty of the firearm specification.

{¶12} A sentencing hearing was held on September 21, 2015. An Order and Journal Entry was filed on September 22, 2015, ordering that Vidal serve a prison term of three years for Burglary and one year for Possessing Criminal Tools, to run concurrently. It also ordered that he "have no contact with the victim in this matter."

{¶13} Vidal filed an Amended Motion for Leave to File Delayed Appeal on March 21, 2016, which was granted. On appeal, Vidal raises the following assignments of error:

{¶14} "[1.] The trial court committed reversible error when it overruled Mr. Vidal's Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support a conviction for burglary and possessing criminal tools.

{¶15} "[2.] Mr. Vidal's conviction for burglary and possessing criminal tools was against the manifest weight of the evidence.

{¶16} "[3.] The trial court committed reversible error and plain error in ordering Mr. Vidal to have no contact with the victim.

{¶17} "[4.] Mr. Vidal was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to object to the court ordering him to have no contact with the victim."

4

**{¶18}** As Vidal did in his brief, we will consider the first two assignments of error, which relate to the manifest weight of the evidence and the sufficiency of the evidence, jointly.

**{¶19}** Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In essence, sufficiency is a test of adequacy." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶20}** In contrast, manifest weight of the evidence "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

5

conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶21}** Vidal first argues that the court erred in finding him guilty of Burglary, since it is not a lesser-included offense of Aggravated Burglary.

**{¶22}** Vidal was indicted for Aggravated Burglary, in violation of R.C. 2911.11(A)(2), which provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> * * *
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

**{¶23}** To prove Burglary, for which Vidal was convicted, the State was required to show that, "by force, stealth or deception" he "[t]respass[ed] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2).

**{¶24}** To determine whether an offense is a lesser-included offense of another, "a court shall consider whether one offense carries a greater penalty than the other,

6

whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus.   This case involved "a bench trial, and unlike a jury, which must be instructed on the applicable law, a trial court judge is presumed to know the applicable law and apply it accordingly."  *State v. Turner*, 11th Dist. Ashtabula No. 2004-A-0005, 2004-Ohio-5632, ¶ 15, citing *State v. Eley*, 77 Ohio St.3d 174, 180-181, 672 N.E.2d 640 (1996).

{¶25}  It has been repeatedly held that Burglary is a lesser-included offense of Aggravated Burglary.  This is the case because "the common elements of both offenses are (a) trespass in an occupied structure (b) by force, stealth, or deception (c) when another person is present (d) with purpose to commit any criminal offense," and because "[t]he additional element of inflicting physical harm or having a deadly weapon is found only in the greater offense of aggravated burglary."  *State v. McKinney*, 11th Dist. Trumbull No. 2007-T-0004, 2008-Ohio-3256, ¶ 163; *State v. Wamsley*, 7th Dist. Columbiana No. 05 CO 11, 2009-Ohio-1858, ¶ 58.

{¶26}  There was sufficient evidence to support the trial court's determination that a Burglary conviction was warranted.  As to the trespass element, the State was required to prove that Vidal did, "without privilege to do so, * * * [k]nowingly enter or remain on the land or premises of another."  *State v. Galloway*, 11th Dist. Lake No. 2013-L-060, 2014-Ohio-1154, ¶ 23, citing R.C. 2911.21(A)(2).  Alansari testified that

7

Vidal and Ecklund, two men he did not know, had stepped inside of the home, where he and another individual lived, while Alansari was present.

{¶27} Vidal argues that the State failed to prove that force, stealth, or deception was used to trespass in the home, contending that there was a lack of testimony to establish whether the door through which they entered was locked or closed. Ohio courts have generally held that the force requirement is met when a defendant enters through a closed, but unlocked, door. *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.) (citing cases from multiple appellate districts). In this case, no testimony was given to prove whether the door through which Vidal and Ecklund entered was locked or closed. There was no evidence presented to show that force was used.

{¶28} However, there was sufficient evidence to prove that the trespass was achieved by stealth. "Stealth" has been defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into * * * a residence of another without permission." (Citation omitted.) *State v. Bullard*, 11th Dist. Trumbull No. 2009-T-0096, 2010-Ohio-3464, ¶ 23. Vidal and Ecklund, wearing hoodies and hats/bandanas that could be used to cover their faces, had burglary tools concealed in their pockets and a backpack, approached Alansari's home, did not go to the front door, did not knock or otherwise announce their presence, and walked to the side of the home. They then entered a side door toward the rear of the house. This supports a conclusion that their objective was to obtain entry into the home without seeking permission to do so. This evidence was sufficient to demonstrate that stealth was used to trespass. *See State v. Gibbs*, 8th Dist. Cuyahoga No. 94349, 2011-Ohio-76, ¶ 12 (where the defendant "did

8

not go to the front of the house" and did not knock or ring the doorbell, went to the rear of the house, and climbed onto the sunroof by a window, stealth was used to attempt to trespass inside the house); *State v. Sims*, 11th Dist. Lake No. 2001-L-081, 2003-Ohio-324, ¶ 62 (where a defendant walked slowly through an apartment complex lobby and began running toward the garage while the security guard was on the phone, and "had no legitimate purpose for being in the garage," there was sufficient evidence of stealth); *also compare State v. Steele*, 12th Dist. Preble No. CA2014-07-005, 2015-Ohio-1705, ¶ 27 (stealth was proven when the defendant "cinched his hood over his face to hide his identity").

{¶29} The State also proved that Vidal had the purpose to commit a criminal offense within the structure. "The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence." (Citation omitted.) *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, ¶ 40. Testimony established that Vidal was wearing gloves, dark clothes, a bandana and a hat, clothing that Officer Oldham opined was inappropriately warm for the weather. Vidal was carrying pepper spray, zip ties, and goggles, and accompanying Ecklund who had a firearm and the wrench. The purpose to commit a theft or other crime was supported by the evidence of Vidal's possession of these items and their entering the house in the manner they did. Based on the foregoing, there was sufficient evidence to support the Burglary conviction, which justified conviction on the lesser-included offense.

{¶30} Regarding the manifest weight of the evidence, the foregoing testimony from both the victim and the police officers weighs in favor of a conviction for Burglary.

9

Specifically Alansari testified to Vidal's conduct and his unauthorized entry into the home while he was inside. Officer testimony established the existence of criminal tools that evidenced Vidal's purpose for entry. There is limited evidence to contradict the State's version of the events.

**{¶31}** While Alansari testified that Ecklund said, "I thought you were James," and the two intruders exited once they encountered Alansari, neither Ecklund nor Vidal testified that they knew someone who lived in the house or had any valid reason to enter it. They did not knock at the front door, they entered silently through the side door, and were wearing items that would not typically be worn when meeting a friend. Further, although Vidal stresses that the men did not run when they were turned away from the home, this is only one piece of evidence to consider. When considering all of the evidence, especially possession of items the officers recognized as tools used in burglaries, we cannot find the conviction was against the weight of the evidence.

**{¶32}** To the extent that Vidal emphasizes that Alansari was unable to identify Vidal at trial as one of the men that entered the home, there is little question that Vidal was one of the men who entered. Alansari identified him right after the event occurred. Vidal was arrested just minutes after the burglary, only blocks from Alansari's home, and was wearing the exact clothing described by Alansari.

**{¶33}** Vidal also argues that one of the two men was "outside the home" at the time Alansari confronted them. The testimony of Alansari, however, was that one man was in the house, and the other one "just stepped into my house" at the time of the confrontation. This does not mean that either man was "outside the house," but merely that the second man had just entered.

{¶34} Vidal also argues that his conviction for Possessing Criminal Tools was not supported by sufficient evidence and was against the weight of the evidence.

{¶35} R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶36} Vidal specifically emphasizes that he was not in possession of the wrench/club that was part of the criminal tools the trial court cited in its judgment. Even presuming that Vidal could not be held responsible for this item, there is no question that he had pepper spray, zip ties, goggles, a mask, and gloves. While these items may have independent and legitimate uses, "[u]nder the circumstances of their possession in this case, it was reasonable for the trier of fact to infer that appellant possessed these items with the intent to use them criminally." *State v. Veselka*, 6th Dist. Lucas No. L-95-343, 1997 Ohio App. LEXIS 881, 5 (Mar. 14, 1997). Given the circumstances outlined above, we find that the conviction for Possessing Criminal Tools was supported by the weight of evidence and that there was sufficient evidence to support the conviction.

{¶37} The first and second assignments of error are without merit.

{¶38} In his third assignment of error, Vidal argues that the trial court erred in determining that he could have no contact with the victim, since both a prison term and community control sanctions cannot be imposed. In his fourth assignment of error, he argues that trial counsel's failure to object to this error amounted to ineffective assistance of counsel.

{¶39} The State concedes that the "no contact" portion of the sentence was made in error and that this court "should vacate the trial court's no-contact order."

11

{¶40} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, or * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b).

{¶41} The Ohio Supreme Court has recently held that, in sentencing a defendant, "as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions." *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 31. Recognizing that a no-contact order is a community-control sanction, it held that, when prison terms were imposed for the felony convictions against a defendant, the court could not also impose a no-contact order for the same offenses. *Id.* at ¶ 32.

{¶42} In the present case, Vidal was sentenced to prison terms for both offenses for which he was convicted, Burglary and Possessing Criminal Tools. As such, the trial court was not permitted to also impose a no-contact order arising from the conduct leading to these convictions. Thus, we affirm Vidal's prison sentence but modify the court's September 22, 2015 Order and Journal Entry to eliminate the no-contact portion of the sentence. *See State v. Vans*, 8th Dist. Cuyahoga No. 103618, 2016-Ohio-3263, ¶ 22. The order is affirmed as modified.

12

{¶43} To the extent that Vidal argues ineffectiveness arising from counsel's failure to object to the foregoing error, given the disposition of the third assignment of error, this issue is moot.

{¶44} The third assignment of error is with merit, to the extent indicated above. The fourth assignment of error is moot.

{¶45} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is modified and affirmed as modified. Costs to be taxed against the parties equally.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.